UNITED STATES DISTRICT COURT
MIDDLE DISTRICT TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ATAIN SPECIALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ALTISOURCE SOLUTIONS, INC.; ALTISOURCE SARL; ALTISOURCE PORTFOLIO SOLUTIONS S.A.; and ALTISOURCE BUSINESS SOLUTIONS PRIVATE LTD,<br><br>Defendants. | Civil Action File No.: |

### ATAIN SPECIALTY INSURANCE COMPANY'S
### COMPLAINT FOR DECLARATORY JUDGMENT

Atain Specially Insurance Company ("Atain") files this Complaint for Declaratory Judgment against Altisource Solutions, Inc., Altisource SARL, Altisource Portfolio Solutions S.A., Altisource Business Solutions Private LTD (collectively "Altisource") and shows the Court as follows:

### NATURE OF THE ACTION

1. This is an insurance coverage action in which Atain seeks declaratory judgment under 28 U.S.C. § 2201 that it does not have an obligation to defend and/or indemnify Altisource for any liability arising out of a lawsuit filed by Sandra and

Robert Arnold (the "Underlying Lawsuit"). A true and correct copy of the Arnolds' Third Amended Complaint in the Underlying Lawsuit is attached as Exhibit A.

## THE PARTIES AND JURISDICTION

2. Atain is a Michigan corporation with its principal place of business in Michigan. Atain is a surplus lines insurance company under T.C.A. § 56-14-101, *et seq*.

3. Altisource Solutions, Inc. ("Altisource Solutions") is a Delaware for profit corporation with its principal place of business in Atlanta, Georgia. Altisource Solutions may be served through its registered agent, Corporation Service Company. at 2908 Poston Avenue, Nashville, Davidson County, Tennessee 37203-1312.

4. Altisource SARL ("SARL") is a private limited liability company organized under the laws of the Grand Duchy of Luxembourg, and its principal place of business is located in Monterey, Luxembourg.

5. Altisource Portfolio Solutions, S.A. ("APS") is a public limited liability company organized under the laws of the Grand Duchy of Luxembourg, with its principal place of business in Monterey, Luxembourg.

6. Altisource Business Solutions Private LTD ("Altisource Business Solutions") is an Indian company with its principal place of business in Bengaluru, India.

7. This Court has personal jurisdiction over the Defendants by virtue of their sufficient minimum contacts with the forum.

8. Complete diversity of citizenship exists because Atain is a Michigan citizen and completely diverse from each of the Defendants.

9. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states, and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

10. Venue is proper in this Court under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claim occurred in the Middle District of Tennessee, including the Underlying Lawsuit, and, the Defendants are subject to the Court's personal jurisdiction in the Middle District of Tennessee.

11. This action is brought pursuant to 28 U.S.C. § 2201 and seeks declaratory relief as to Atain's obligations owed to Altisource with respect to the Underlying Lawsuit under Atain's Policy issued to Precision Field Services, LLC ("Precision"). Altisource has sought coverage under Precision's Policy as a purported additional insured. Atain is uncertain as to its duties, rights, and obligations and files this declaratory judgment action to resolve questions of coverage under the insurance policy, including its duty to defend and/or indemnify Altisource. An actual and justiciable dispute over those duties, rights, and obligations exists between the parties.

3
Case 3:20-cv-00411   Document 1   Filed 05/14/20   Page 3 of 20 PageID #: 3

## ATAIN'S INSURANCE POLICY

12. Atain issued a Policy No. PLS02153 to Precision with effective dates of March 13, 2018 through March 13, 2019 (the "Policy"). The Policy provides certain commercial general liability ("CGL") and professional liability ("PL") insurance coverage, subject to its terms, conditions, and exclusions. A true and correct copy of the Policy is attached as Exhibit B.

13. The Policy's Declarations page names Precision as the only Named Insured on the Policy. Ex. B, Policy, PL1002 (06/07); PL1009C (09/11). The Policy contains an endorsement titled: ADDITIONAL INSURED – AUTOMATIC WHEN REQUIRED BY CONTRACT. Ex. B, Policy, PL3130 (01/16).

14. In April 2015, Precision and SARL entered into a Master Field Vendor Agreement (the "Agreement"). In the Agreement, Precision agreed to perform certain professional services for Altisource related to the preservation and inspection of foreclosed properties. A true and correct copy of the Agreement is attached as Exhibit C.

15. The Agreement required Precision to procure commercial general liability insurance and name Altisource as an additional insured. *Id*.

16. The Agreement further provides that Altisource may request Precision obtain "E&O" insurance, but Altisource did not request Precision do so. *Id*.

Moreover, the Agreement does not require Altisource be named as an additional insured on Precision's E&O or professional liability insurance. *Id*.

17. The Policy's CGL coverage provides:

**SECTION I — COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

   * * *

   b. This insurance applies to "bodily injury" and "property damage" only if:
      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"

   * * *

2. **Exclusions**

   This insurance does not apply to:

   a. Expected or Intended Injury

      "Bodily injury" or "property damage" that was expected or intended from the standpoint of the insured. This exclusion

does not apply to "bodily injury" resulting from the use of force to protect persons or property.

* * *

## COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

* * *

**2. Exclusions**

This insurance does not apply to:

    **a. Knowing Violation of Rights of Another**

    "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

* * *

## SECTION V. — DEFINITIONS

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

* * *

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

* * *

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    * * *

    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor.

    * * *

17. "Property damage" means:

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

18. The Policy's PL coverage provides:

**MISCELLANEOUS PROFESSIONAL LIABILITY COVERAGE FORM**

**I. INSURING AGREEMENTS**

A. The Company will pay on behalf of the Insured, Loss in excess of the Deductible not exceeding the Limit of Liability shown on the Policy Declarations for which this coverage applies that an Insured shall become legally obligated to pay because of Claims first made against an Insured during the Policy Period or if applicable, during the Extended Reporting Period, for Wrongful Acts or Wrongful Acts resulting in Personal Injury, arising solely out of an Insured's duties on behalf of the Named Insured or Subsidiary.

B. The Company will pay on behalf of the Insured any Loss in excess of the Deductible not exceeding the Limit of Liability as described in Section VI.C. to which this coverage applies that an Insured

shall become legally obligated to pay because of a Claim(s) alleging Third Party Discrimination, provided that such Claim(s) arises out of a Wrongful Act of an Insured and is first made against an Insured during the Policy Period or if applicable during the Extended Reporting Period.

C. The Company has the right and duty to defend any Claim to which this insurance applies, even if the allegations of the Claim are groundless, false or fraudulent.

D. The Company will reimburse the reasonable expenses incurred by an Insured, including loss of wages, if the Insured is required by the Company to attend arbitration proceedings, trial or a hearing in defense of a Claim, in the amount of $250 per day for each Insured who attends such proceedings at the Company's request, subject to a maximum of $5,000 per Claim. Payments made pursuant to this provision shall be in addition to the Limits of Liability shown in the Policy Declarations. The Deductible amount stated in the Policy Declarations shall not apply to the payments made by the Company pursuant to this provision.

* * *

## III. DEFINITIONS

M. "Professional Services" means services rendered to others for a fee solely in the conduct of the Insured's profession as stated under the Business Description of the Common Policy Declarations, including such services provided electronically utilizing the Internet or a network of two or more computers However, Professional Services shall not include the following: any services based upon, arising out of, directly or indirectly, in whole or in part, or in any way involving the services of an accountant, architect, banker, doctor, engineer, franchisor, hardware manufacturer/ distributor, insurance agent, insurance company, internet service provider, investment banker, lawyer, mortgage banker/ broker, physician, security broker/ dealer, structured settlement broker, or web site host services.

* * *

P.  "Wrongful Act" means any actual or alleged error, omission or negligent act committed solely in the rendering of or failure to render Professional Services by an Insured or any person, including an independent contractor acting on the behalf of the Named Insured or Subsidiary, for whom the Insured is legally liable in the rendering of Professional Services. The same Wrongful Act, an interrelated series of Wrongful Acts or a series of similar or related Wrongful Acts by one or more Insureds shall be deemed to be one Wrongful Act and to have commenced at the time of the earliest Wrongful Act.

* * *

## IV. EXCLUSIONS

The Company shall not be liable to make payment for Loss or Claims Expenses in connection with any Claim made against an Insured arising out of, directly or indirectly resulting from or in consequence of or in any way involving:

A.  Conduct by any person that is criminal, fraudulent, dishonest or with the intent to cause damage or the gaining by any Insured of any personal profit, remuneration or advantage to which an Insured was not legally entitled; provided however, this exclusion shall not apply to Claims Expense incurred until a final judgment or adjudication is rendered against the Insured as to this conduct; or

B.  Any Claim by or on behalf of any Insured against any other Insured; or

C.  Any actual or alleged bodily injury, sickness, disease, or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof; or

19. The Policy contains a Professional Services Exclusion that applies to the Policy's CGL coverage as follows:

## VI. PROFESSIONAL SERVICES EXCLUSION

* * *

This insurance does not apply and there shall be no duty to defend or indemnify any insured for any "occurrence", "suit", liability, demand or cause of action arising, in whole or part, out of any claim involving the rendering or failure to render any "professional service."

Further, when any insured has purchased or obtained errors and/ or omissions coverage or any other type of professional insurance coverage and the claim, in any way arises, in whole or part, out of the services performed by any insured, there shall be no duty to defend or indemnify under this policy. Whether or not such E&O or any other professional coverage has been purchased or obtained, however, the first paragraph of this exclusion remains in full force and effect.

"Professional Service" includes, but is not limited to, any of the following: (1) accountant; (2) architect; (3) engineer; (4) insurance agent or broker; (5) lawyer; (6) any medical professional; (7) real estate agent or broker; (8) surveyor; (9) health inspector; (10) safety inspector; (11) any service where an insured is retained or asked to render an opinion, written or verbal, to a third-party; or (12) any other service that is of a professional nature, regardless of whether a license or certification is required.

Combined Coverage and Exclusion Endorsement, Form No. AF 001 007 06/2017:

20. The Policy also includes a Theft Exclusion endorsement, which applies to both the CGL coverage and the PL coverage. It provides, in pertinent part:

This insurance does not apply to any Claim arising out of or in any way, directly or indirectly, from the theft, robbery, stealing, burglary or larceny by any person. There shall be no duty to defend and indemnify for such a claim.

10
Case 3:20-cv-00411   Document 1   Filed 05/14/20   Page 10 of 20 PageID #: 10

However, if the Professional Liability or Commercial General Liability coverage parts include a sublimit of coverage for Theft, this exclusion will not apply to that coverage.

PL3092 (10/13).

21. The Policy also includes a Fraud, Concealment and Misrepresentation provision, which provides:

* * *

**B. FRAUD, CONCEALMENT AND MISREPRESENTATION IN PRESENTING ANY CLAIM**

With respect to all "insureds" covered under this policy and their representatives, we do not provide coverage if one or more "insureds" have:

    a) Concealed or misrepresented any material fact or circumstance; or

    b) Engaged in fraudulent or dishonest conduct relating to a claim.

Any actions taken by an insured, or their representative, as outlined in this endorsement may cause a denial of coverage or voiding of the policy. In any such instance, there shall be no duty to defend or indemnify any insured.

Policy, No. AF-3380 (06/ 17).

22. The Policy also includes a Punitive Damages Exclusion, which applies to both the CGL and PL coverages. The Exclusion provides:

It is agreed that IV. EXCLUSIONS, is amended to include the following additional exclusion:

    V. Any claim for punitive or exemplary damages against any insured.

23. Finally, the Policy contains an Additional Insured provision that provides as follows:

# ADDITIONAL INSURED — Automatic When Required By Contract

* * *

WHO IS AN INSURED is amended to include the client or customer specifically named in a written contract with the Named Insured, but only respecting defense costs incurred or liability imposed or sought to be imposed on such additional insured because of a Wrongful Act of the Named Insured, and only if prior to notice of the Claim, a written contract was entered into by the Named Insured that specifically requires that such client or customer be added as an additional Insured.

1. To the extent liability for injury or damage is imposed or sought to be imposed on the additional insured because of:

    a. Its own acts or omissions or the acts or omissions of others besides the Named Insured, this insurance does not apply;

    b. Its acts or omissions and those of the Named Insured, as to defense of the additional insured, this insurance will act as coinsurance with any other insurance available to the additional insured, including self-insurance, in proportion to the limits of liability of all involved policies, and the Other Insurance provisions of this policy are amended accordingly. However, this insurance does not apply to the defense or indemnity of the additional insured for its own acts or omissions or the acts or omissions of others besides the Named Insured.

2. If a written agreement between the Named Insured and the additional insured providing indemnity or contribution in favor of the additional insured exists, the extent and scope of coverage under this insurance for the additional insured will be no greater than the extent and scope of defense or indemnification of the additional insured pursuant to this endorsement, regardless of what was agreed to by the Named Insured.

PL3130 (01/ 16).

## THE ALLEGATIONS IN THE UNDERLYING LAWSUIT

24. The Arnolds filed the Underlying Lawsuit, seeking compensatory and punitive damages due to the alleged intentional entry into the subject premises and taking and removing of the Arnold's personal property (again, the "Underlying Lawsuit"). The Arnolds seek to recover the value of the their property, emotional distress damages, and punitive damages. The current operative pleading is the Third Amended Complaint (Exhibit A).

25. On February 15, 2000, the Arnolds allege they borrowed $54,750 from GFMS LLC secured by a Note and Deed of Trust in GFMS's favor (the "Mortgage") on the home at 259 Patrick Road, Fayetteville, TN 37334 (the "Property").

26. The Mortgage was allegedly assigned and transferred to US Bank on October 17th, 2011. Ocwen Loan Servicing, LLC ("Ocwen") began acting as US Bank's attorney-in-fact for the administration of the Mortgage, and as a part of this role, Ocwen assumed a variety of loan servicing responsibilities including the administration of foreclosure and post-foreclosure proceedings.

27. On March 1, 2018, the Arnolds allege that Ocwen initiated foreclosure against the Property.

28. On March 29, 2018, U.S. Bank bought the Property in a foreclosure sale.

29. As part of the post-foreclosure process, Ocwen contracted with SARL to manage the inspection and preservation of real and personal property at the Property.

30. SARL then contracted with Precision for the inspection and preservation of property.

31. Under the contract between SARL and Precision, Precision allegedly had a duty to place a Personal Property Notice at the Property informing the Arnolds they had 30 days to remove their personal property before it would be removed. a

32. Precision allegedly sub-contracted with Listworthy, LLC ("Listworthy") to assist with inspection and property preservation.

33. Following the foreclosure sale, the Arnolds claim they maintained a possessory right over both their real and personal property. The Arnolds also maintain they retained ownership of all the personal property.

34. On April 13, 2018, the Arnolds claim that all the defendants in the Underlying Lawsuit illegally trespassed and entered the home on the Property, despite the defendants' determination that the home was occupied.

35. The Arnolds allege that one week after the trespass, Listworthy negligently determined that the property was vacant, and that in making this determination, Listworthy and its employees trespassed on the Property.

36. The Arnolds claim that Listworthy did not timely post the required Personal Property Notice at the Property.

37. The Arnolds allege Precision knew that Listworthy did not post the Personal Property Notice. The Arnolds further contend that Precision falsified a

Personal Property Notice and uploaded this into its system, representing to Altisource that the Notice had been posted timely.

38. The Arnolds claim that Altisource knew or should have known that he Personal Property Notice had not been posted, as the photo of the Notice that was uploaded and provided to Altisource did not clearly represent that it was posted inside the front window of the Property. The Arnolds also allege that the upload had a technological footprint demonstrating that it had not been taken at the Property, and that its timestamp had been altered.

39. The Arnolds further contend that on or about April 25, 2018, Altisource was informed by Maid Brigade Services, Inc. that the Property was occupied, and allege that Altisource received photographs confirming that the Personal Property Notice had not been posted at the Property.

40. The Arnolds claim that despite knowledge that the Property was occupied and that the Personal Property Notice had not been posted, Altisource directed the sacking of the Property (i.e., removal and destruction of the Arnolds' personal property).

41. The Arnolds allege that Precision directed Listworthy to post the Personal Property Notice at the Property on May 12, 2018, knowing that it had not previously been posted as represented on April 20, 2018.

42. Therefore, the Arnolds contend that Listworthy had to have known on May 12, 2018 that it had failed to post the Notice.

43. On May 15, 2018, the Arnolds attended the noticed hearing on the detainer warrant for a judgement for possession of the Property filed by US Bank. No representative for US Bank, Ocwen, or Altisource appeared in court for the hearing. Due to this lack of appearance, the Arnolds claim that none of these entities obtained rights to enter the Property without the Arnolds' consent.

44. On or about May 18, 2018, the Arnolds contend they returned to the Property, packed some of their personal property into boxes, and left the boxes inside the residence along with larger pieces of property such as furniture. The Arnolds allegedly planned to return to the Property with a U-Haul to remove their personal property.

45. On May 23, Listworthy allegedly sought clarification regarding what notice to post at the Property.

46. The Arnolds alleged that Precision requested an extension from Altisource to clean out the Property. This request was allegedly denied by Altisource, who ordered the clean out to be done "on priority".

47. The Arnolds claim that Precision and Listworthy moved forward with the cleanout, despite knowing that the Personal Property Notice had not been posted timely.

48. The Arnolds contend that on or about May 24, 2018, they returned to the Property and discovered that most of their personal property had been removed.

49. Further, they claim they returned again on May 27, 2018 and discovered two movers employed by Precision and/or Listworthy on the Property, removing more of the Arnolds' personal property. The Arnolds claim that the two movers stated that they had entered the Property on prior occasions, removed personal property, and subsequently disposed of the property at a landfill.

50. The Third Amended Complaint's causes of action again Altisource include negligence, conversion, trespass, trespass to personal property/chattels; and intentional infliction of emotional distress.

### ALTISOURCE'S TENDER AND ATAIN'S REJECTION

51. Altisource has tendered their defense and indemnification to Atain for the Third Amended Complaint in the Underlying Lawsuit.

52. Atain rejected Altisource's tender via letter dated May 7, 2020, but expressly reserve the right to bring a declaratory judgment action to determine Atain's coverage obligations.[1]  *See* Atain's Letter to Altisource, a true and correct copy is attached as Exhibit D.

---

[1] Atain and Altisource have exchanged numerous letters regarding Altisource's claim that it is an additional insured under the Policy for the claims asserted in the Underlying Lawsuit.

52. Atain now seeks a declaration concerning its obligations regarding Altisource's claims that it is an additional insured under the Policy, and that Atain must defend and/or indemnify it for the allegations in the Underlying Lawsuits.

## COUNT I – DECLARATORY RELIEF

53. Atain incorporates all prior allegations in paragraphs 1-52.

54. Atain seeks a ruling that they have no duty to defend or indemnify Altisource in the Underlying Lawsuit, or against any claims arising out of the operative allegations in the Underlying Lawsuit.

55. First, Altisource is not an additional insured under the Policy's PL coverage because the Agreement does not require Precision procure professional liability coverage (E&O) for Altisource, nor does the Agreement require Altisource be named as an additional insured on any E&O coverage.

56. Second, Altisource is not entitled to coverage as an additional insured under the Policy's CGL coverage because but the liability imposed or sought to be imposed on Altisource in the Underlying Lawsuit is not because of Precision's wrongful acts, but is for Altisource's own acts or omissions or those of others.

57. Third, even if Altisource were an additional insured, the claims made in the Underlying Lawsuit do not trigger the Policy's CGL coverage's insuring agreement for "bodily injury" or "property damage" caused by an "occurrence," but instead implicate the providing of professional services.

18
Case 3:20-cv-00411   Document 1   Filed 05/14/20   Page 18 of 20 PageID #: 18

58. Fourth, even if Altisource were an additional insured, the CGL coverage's exclusion for Expected or Intended Injury applies to bar coverage.

59. Fifth, even if Altisource were an additional insured, the Policy's Professional Services Exclusion applies to bar coverage under the Policy's CGL coverage for any claim arising out of or involving the rendering or failure to render any professional services.

60. Sixth, even if Altisource were an additional insured, the claims made in the Underlying Lawsuit do not fall with the Policy's CGL coverage for personal and advertising injury and/or the claims are barred by the exclusion for acts caused by or at the direction of the insured with the knowledge that the act would violate the rights of another.

61. Seventh, even if Altisource were an additional insured, the Policy's Fraud Endorsement explicitly bars coverage for fraudulent or dishonest activity.

62. Eight, even if Altisource were an additional insured, the Policy's Theft Exclusion bars coverage for any claims in the Underlying Lawsuit related to theft.

63. Ninth, even if Altisource were an additional insured, the Policy's PL coverage excludes coverage conduct which is criminal, fraudulent, dishonest, or with the intent to cause damage or the gaining by any Insured party of any personal profit, remuneration, or advantage to which an Insured is not legally entitled.

64. Tenth, even if Altisource were an additional insured, the Policy's PL coverage excludes coverage for any damage or destruction of any tangible property.

65. For all of these reasons, individually or together, Atain is entitled to a declaratory judgment that it owes no obligation to defend and/or indemnify Altisource for any and all claims made in the Underlying Lawsuit.

66. Atain asks this Court to declare that it has no obligation to defend and/or indemnify Altisource for the Underlying Lawsuit.

## **PRAYER FOR RELIEF**

Wherefore, Accordingly, Atain respectfully asks:

(a) This Court to declare that there is no coverage available to Altisource under the Policy for the claims set forth in the Underlying Lawsuit;

(b) This Court enter a judgment that Atain owes no duty to defend Altisource in the Underlying Lawsuit or against any claims or suits that may have been or may be brought arising out of or related to the Underlying Lawsuit's allegations;

(c) The Court to award Atain its costs of suit and such other relief as the Court deems just and proper..

Signed this 14th day of May, 2020.

**COPELAND STAIR KINGMA & LOVELL**  
735 Broad Street, Suite 1204  
Chattanooga, TN 37402  
Telephone: 423-777-4693  
Facsimile: 423-648-2283  
bspitler@cskl.law

/s/ Brian S. Spitler_____  
Brian Spitler  
TN Bar No. 032649  
*Attorney for Plaintiff*